### SNOW et al. v. KELLAR-THOMASON CO.

(Circuit Court of Appeals, Ninth Circuit. March 5, 1917.)

#### No. 2893.

PATENTS ⬤═329—VALIDITY AND INFRINGEMENT—GATE FOR IRRIGATION SYSTEMS.

The Kellar patent, No. 1,016,159, for a gate for irrigation systems, the essential feature of which is the means for attaching the end of the irrigation pipe to the gate is sufficiently specific, was not anticipated, and discloses patentable invention; also *held* infringed.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Wm. C. Van Fleet, Judge.

Suit in equity by the Kellar-Thomason Company against Frank P. Snow and Frank S. Livingston, partners as the Snow Manufacturing Company. Decree for complainant, and defendants appeal. Affirmed.

Frederick S. Lyon, of Los Angeles, Cal., for appellants.

Charles C. Montgomery, of Los Angeles, Cal., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is an appeal from a decree enjoining infringement of certain letters patent, No. 1,016,159, issued to Geo. E. Kellar, of which appellee is the owner. It is alleged by appellants that the patent is void for want of invention, for anticipation, and for indefiniteness and uncertainty, both of specification and claim. The claim is as follows:

"A gate having a plate with an opening through which water may flow, a pipe having its end abutting against said plate adjacent to said opening, said plate having an outwardly projecting flange encircling the end of said pipe and forming an annular space between the end of said pipe and said flange, and a cementitious filler in said annular space securing said plate to said pipe."

The object of the invention is declared to be to provide improved means for attaching a gate or valve to the end of irrigating systems

pipe. Then are set out the specifications. These particularly describe the gate or valve, which is provided with an outwardly projected flange, designed as one of the means of attaching the gate or valve to the end of the irrigation pipe. The specifications then proceed:

"In attaching the gate to the pipe, the end of the pipe is placed against the outer face of the ring *12*, so that the bore of the pipe registers with the openings *7* and *7a*. The annular flange *15* is of enlarged diameter, so that an annular space is formed between the end of the pipe and the flange. With the pipe applied to the gate in this position, I fill this annular space with a filler of cement or a similar composition, which is adapted to set and harden in place. After this cement *16* hardens, the gate will be found to be securely fastened to the pipe, for the cement attaches itself to the outer surface of the pipe and the inner surface of the flange *15*."

Exception is taken to the specifications, in that they do not describe the method or process of compounding the filler of cement, which constitutes one of the means of uniting the valve to the end of the pipe. The criticism fails to discern the real elements of the device, one of which consists of the filler of cement, or, as styled in the claim, a "cementitious" filler. The ingredients going to make up the filler or the manner of their compounding have no place in the patent as an element; but any compound or primary element, if need be, having the property of cement, and which will cause substances to adhere, satisfies the requirement of the patent. The case of The Incandescent Lamp, 159 U. S. 465, 16 Sup. Ct. 75, 40 L. Ed. 221, and other cases of like import, applying section 4888, Revised Statutes (Comp. St. 1913, § 9432), are therefore not in point.

The device which the patent is designed to protect is a simple one, as will be appreciated by reference to the specification above quoted, and in particular it consists in the annular flange extending from a plate so adapted to encircle the end of the pipe as to form an annular space between the flange and pipe, which space is to be occupied by a filler of cement or similar composition for securing the flange and thereby the plate to the pipe. The plate has an opening conterminous with the cavity in the pipe, which opening is provided with a valve or gate for controlling the outflow of the water. The gate or valve is, however, merely an old element in the combination.

Several devices have been previously patented for securing gates or valves to the ends of pipe for the purpose of controlling and regulating the outflow of water, and for uniting sections of pipe at the joints. Generally, however, these gates are held to the pipe, or the sections of pipe are held together, by means of lags and bolts, or yokes and grooves, or some such contrivances, combined with cement fillers, but are not dependent alone upon the adhesive property of the cement. Thus it will be seen by reference to the Seitz patent that the plate with which the gate co-operates is secured to the end of the pipe by means of bolts, extending from the plate through a clamping plate, which engages the bell of the conduit on the outside. True, the bell of the conduit overlaps the flange extending from the plate, so that a space is left which is filled with cement or other suitable packing material for the purpose of making a water-tight joint; but the function of the cement is to make a water-tight joint, not for securing the

pipe to the head of the gate. That is to be done by means of the clamping plates and the bolts.

So it is in the Worley and Buttorff patents. In the former a collar is devised of lesser diameter than the cavity of the pipe, which is inserted part way into the pipe and firmly affixed to the pipe by luting of cement laid against the end of the pipe and around the collar, and extending into the annular space between the collar and the pipe. The gate is secured to the pipe and the collar by means of two continuous wire-clamping members, so constructed that the ends extend through the luting of cement and the collar, and so bent as to receive the gate between such members and the collar. In the latter patent a corrugated iron pipe or conduit is connected with the headgate frame; the frame being provided with a collar inclined inwardly as it extends rearwardly, equipped with eyes or apertured lugs. From these eyes or lugs bolts are extended rearwardly to and through lugs made fast to the conduit. In addition a body of cement is placed between the collar and the inner extremity of the corrugated iron pipe or conduit, all of which serves to bind the pipe to the headgate frame.

Referring to the joining together of sections of pipe or conduit, the Hassall and Bentley patents are good illustrations. The Hassall patent employs the spigot and bell. The spigot end is inserted into the space formed by the bell, and tightly fitted around the spigot end are two excentric rings. Between the two adjoining surfaces of the rings a plastic cement is placed by which a tight joint is formed. At the outer ends of these rings, and within the annular space of the spigot and bell still left, Portland cement is pressed to close the mouth of the socket.

The Bentley patent employs the spigot and bell; the spigot end being provided with a groove running around it. This groove reaches within the bell. The bell is provided at the outer end with a rim extending inward. The two parts being put together, an annular space, which is formed, is filled with cement, thus locking the section firmly together. Besides these, a type of joining the ends of sections of pipe is illustrated in the International Library of Technology (volume 98). In this illustration the bell and spigot are used. An oakum packing or gasket is first laid around the spigot end in the annular space, and is tamped back to the bottom of the joint. The rest of the space is then filled with a cement mortar, which extends out of the pipe a short distance and is sloped up against the end of the bell.

In all these instances the dominating idea is the firmly annexing of a gate or valve to the end of the pipe, or the securing of a compact and stable union of different sections of pipe, and the question is presented whether there is in any of them anticipation of the Kellar patent.

From the testimony it appears that there is not the same longitudinal pressure tending to break apart sections of pipe joined together for use as there is at the headgate, which has a tendency to blow it off as explained by some of the witnesses. This is conceded by Binckley, a witness for appellants. Referring to the Hassall patent, he says:

"I don't think I would say that this joint, as shown here, could be compared to the gate as disclosed in the plaintiff's patent, this being purely a joint in a pipe line."

Such appears to be the consensus of opinion of expert witnesses, including the inventor of the alleged device. The idea of constructing a stable joint and uniting different sections of pipe is to withstand lateral pressure, and not longitudinal, and to secure strength in sustaining a continuous pipe line. The idea is but little suggestive of an approved method of durably annexing a headgate to the end of the pipe, where the longitudinal or outward pressure against the headgate is to be overcome.

It appears, furthermore, that controlled by previous experience and the prior art it was thought to be essential that a headgate, in order to withstand the outward pressure of the water against it, should be attached to the end of the pipe, by the appliance of some such means as lugs and bolts, or yokes and grooves, and the like, with cement union, so as to firmly unite the parts together, and prevent breaking away or parting. The notion that a flange or collar, passed over the end of the pipe, forming an annular space, and this filled with cement, would suffice to give the requisite strength to withstand the longitudinal water pressure, had not been hit upon. Indeed, those versed in the prior art believed that, because of the tendency of iron or vitrified material, and other substances out of which pipes are made, to expand and contract by the influence of heat and cold, cement would not adhere with sufficient strength to resist the anticipated pressure. It has been discovered, however, that the notion is fallacious, and that, on the other hand, the cement does adhere with ample strength to resist the pressure for all practical purposes of irrigation. This would seem to be an advance upon the prior art.

The only patent that appears to at all approach the idea is that of Worley. In that the flange is pushed part of its length into the pipe, and, being smaller in circumference than the inner circumference of the pipe itself, affords an annular space. This space is filled with cement as in the patent in dispute. But, not only this, the cement is carried up against the end of the pipe, and extends outwardly to cover the exposed portion of the flange. It is through this part of the cement and the flange itself that the wire-clamping members are extended. It will be observed that the clamping members do not extend through the pipe itself, but only through the cement laid up against the end of the pipe and extended along the flange and into the annular space. It may be supposed that the inventor believed he was obtaining greater adhesive strength by carrying the cement up against the end of the pipe, and that virtually he was securing an extension of the pipe itself, so that the idea was really to anchor the clamping members into the pipe, for he says: "The collar may be regarded as a section of the pipe." However this may be, it is plain that the inventor had in mind the idea of overcoming pressure from without, and not from within, the pipe. The headgate was designed to control the inflow of the water, not its outflow, and the pressure to be overcome tended to drive the flange or joint inward, not outward. So that the idea of securing strength at the union to prevent the headgate blowing out never presented itself to the inventor. It therefore appears to us that there is nothing in the prior art to indicate anticipation as it respects the appellee's patent.

The next inquiry is: Does the device show the exercise of inventive faculty; or does it consist merely in the application of mechanical skill and the use of common knowledge of the art? As previously indicated, the adhesive property of cement was well known to the art, but no one had struck upon the idea that the adhesion would be of sufficient strength to overcome the outward pressure of the water at the headgate used for practical irrigating purposes. All were obsessed with the idea that the headgate must be otherwise anchored to the pipe to prevent its being blown off. The inventor was not himself sure of his ground until he tried the experiment and found that the cement adhered with sufficient force to meet his purpose. His knowledge of the prior art did not teach him what he thus discovered or ascertained. Nor was it a case of the mere application of mechanical skill, because the strength of the adhesive property of the cement was then unknown as applied to the purpose which he desired to accomplish. True, the discovery was exceedingly simple, and it is an object of wonder why everybody, or at least every mechanic, did not appreciate the mechanical effect. Yet it is true that no one seems to have known it. But because the contrivance appears simple after it has been once developed affords no absolute reason why it lacks novelty. Indeed, the most simple contrivances sometimes present the clearest examples of the product of inventive faculty, and we quite agree with the learned District Judge that the present device involves invention. "It involves that which is new in the art, the last step, as it has been termed." See Gandy v. Main Belting Co., 143 U. S. 587, 12 Sup. Ct. 598, 36 L. Ed. 272. Further than this, the fact appears in evidence that the device went into immediate and general use, superseding other devices, and reduced very much the cost to the user, which is evidence in itself of novelty as well as utility.

It can scarcely be questioned that the appellants' devices are infringements upon the Kellar patent, and, it being ascertained that the Kellar patent is valid, the decree of the court below will be affirmed.