AKME FLUE, Inc., v. ALUMINITE FLEXIBLE FLUE CAP CO., Inc.

Circuit Court of Appeals, Second Circuit.

July 2, 1928.

No. 335.

Patents ⟣328—1,509,674, for process and apparatus for consuming flue impurities from kitchen range ovens, held valid.

Koehler patent, No. 1,509,674, for consumer of flue impurities, involving process and apparatus to dispose of greasy soot from kitchen range ovens, *held* valid and not anticipated.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Akme Flue, Inc., against the Aluminite Flexible Flue Cap Company, Inc., charging infringement of each of the six claims of patent No. 1,509,674, granted September 23, 1924, on application filed March 29, 1923, by Maxemilean E. Koehler, and by him assigned to the complainant. From a decree dismissing the bill, and holding the patent invalid, complainant appeals. Reversed and remanded.

Julian S. Wooster, of New York City, and Donald Malcolm, of Brooklyn, N. Y., for appellant.

W. Rossiter Redmond, of Brooklyn, N. Y., for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. This is a patent for a "consumer of flue impurities," and discloses both a process and an apparatus for getting rid of greasy soot from kitchen range ovens by passing the fumes from the oven through a flue having a filter mat of steel wool; the object being to prevent the fouling of kitchen walls and hangings. The specifications recite that the attempt to remove the soot and grease from heated gases by asbestos fiber and other filters has been unsuccessful, because the filtering material quickly becomes foul, but that the inventor has discovered that steel wool will catch and consume soot and grease without becoming fouled over a long period of use.

Claims 1 and 2 relate to the process. It will be sufficient to quote claim 1, which reads as follows:

"1. The method of eliminating soot and grease from cooking vapors which comprises leading said vapors through a flue containing metal wool to separate out and consume the soot and grease by slow combustion."

Claims 3 to 6, inclusive, relate to the apparatus. Claim 4 may be quoted as representative of all:

"4. The combination with a flue pipe through which greasy and sooty vapors and gases are adapted to be passed, of a nonfouling steel wool cooperating with said flue pipe, so that the vapors and gases contact therewith before being discharged from the flue pipe to lessen staining."

The District Court found infringement if the patent were valid, but held it invalid because anticipated by patent No. 1,215,385 to Kling and by Koehler's own prior patent, No. 1,377,694.

The Kling patent discloses the use of steel wool as a filtering medium to catch the fine metallic dust carried in gases issuing from a blast furnace. Its object is declared to be to clean the gases, so as to give them maximum efficiency for subsequent use for heating or power purposes. Kling sought a means to catch and hold inorganic and noncombustible dust particles in blast furnace gases; and the later patent to Kling and Weidlin, No. 1,395,833, shows a device for shaking from the steel wool filter mat the dust so caught. Koehler, on the other hand, was working with organic particles of grease and soot from cooking ovens, and sought a means not merely to catch and hold them, but to consume them by some chemical action. To hold that there is any suggestion in Kling's patent of what Koehler did, or that "the applicability of steel wool to the new use" Koehler made of it would occur to any person of ordinary skill in the art seems to us unwarranted. The filtering of inorganic dust from combustible gases is a very different problem than the consuming of greasy soot carried by kitchen oven vapors.

Nor is Koehler's first patent an anticipation. That disclosed "mineral wool asbestos, hair, or the like" as a filtering medium

for cooking oven vapors. It had nothing to do with the process of consuming soot and grease by contact with the filtering material. It is conceded that mineral wool asbestos is not an express disclosure of steel wool. The addition of the phrase "or the like" is not enough to include it when one considers what is required for anticipation. The evidence shows a progressive discovery of Koehler's final invention. Some effort is made to argue that steel wool does not really operate to consume the grease and soot, as the inventor claims. No evidence, however, was introduced to prove the patent inoperative, and on this record we accept it at its face value. The presumption of validity has not been overcome.

Foll's patent, however, was a plain anticipation, inasmuch as he discloses steel wool, though accompanied by a layer of asbestos, to filter the fumes of a gas stove oven. Thus Koehler must rely upon his proof of discovery before March 13, 1922, the date of Foll's application. His testimony is that as the result of experiments with steel wool and asbestos filter mats, he learned by May, 1921, that the steel wool alone consumed the greases and was superior to steel wool and asbestos in contact. He sold his first patent, which discloses an asbestos filter, to Tyson & Frame in June, 1921, and then advised them to use the steel wool mat. There is ample corroborative oral testimony as to his use of steel wool in flues made in the spring of 1921. Documentary corroboration is offered in a catalogue gotten out by Tyson & Frame, Exhibit M–1. No date appears thereon, but Tyson says it was put out in the latter part of 1921. On the whole, we are satisfied that Koehler has proved that his invention antedated March 13, 1922.

Other patents in the art were thoroughly discussed by the District Judge, and nothing need be added to his clear exposition of them.[1]

We are satisfied that upon this record the patent in suit is not shown to have been anticipated and should be held valid. The

or other material insures an equal distribution of the heat produced by the jet of burning air and gas. * ⁜ ⁜'

"The use of the twisted wire, wire gauze, iron cuttings, or shavings was to insure an equal distribution of the heat from the stove.

"The patent to Scott and Williams, No. 219,-986, dated September 23, 1879, is an improvement in smokestacks.

"On page 1, col. 1, patent states: 'Our invention relates specifically to improvements in the manner of connecting the two parts of the smokestack, between which the edge of the wire-netting spark arrester is held.' The Scott and Williams patent merely shows a wire netting screen near the top of a large smokestack to catch sparks. This patent does not in any respect anticipate plaintiff's patent.

"The patent to Charles La Berge, 1,192,078, issued July 25, 1916, is an attachment for gas ranges. The inventor claims: 'The object of my invention is to condense a portion of the fatty material from the oven gases and to dissipate the balance, so that it will not move in a concentrated steam and will not form localized deposits on the wall.' The tube or pipe applied to the oven ventilating flue is tubular in shape, closed at the top. Along the sides and front is a series of holes, through which the oven gas will pass and will be dissipated in various directions. Before the gas passes through the imperfections, it is necessary that they first pass through a wire netting, which collects a considerable quantity of the fat contained in the heated gases from the oven. The La Berge patent does not tend to eliminate the soot and gas from passing through the holes of the pipe and staining the walls. It merely tends to stop the localization of the grease spots on the wall.

"The Ziegler patent, No. 1,344,670, issued June 29, 1920, is an improvement on separators for gas stoves. This patent was not cited by the Patent Office during the prosecution of the patent in suit. The Ziegler patent uses sheets or baffles of fibrous material, such as asbestos, to catch grease and soot which becomes lodged in the perforations of the filter.

"The patent to Kling was issued on February 13, 1917, and is a filtering medium for cleaning furnace gases. This patent was not cited by the Patent Office. The invention is to remove dust from furnace gases, so that the gases may be used for fuel or power purposes without objectionable results. In the patent it reads: 'However, for the purposes of the present invention, this body of steel wool, through which the dust-impregnated gas passes, may be either inwoven or unwoven form, because the cardinal feature of the invention resides in passing the furnace gases, at any convenient point in their travel from the furnace, through a strata or diaphram or steel fibers or threads, usually in the form known as the steel wool referred to. It has been found that, when the dust-laden gases are passed through a strata of steel fibers or steel wool, a remarkably complete and superfine extraction of the dust from the gas takes place. A very pronounced affinity exists between the steel and the dust, resulting in the

---

[1] So much of the District Judge's opinion as refers to other patents is here set out:

"Seven patents were introduced in evidence. The patent to Barnes, 132,793, was issued November 5, 1872. It deals with an improvement in gas heaters, in which the patentee claims that the invention relates to an economical heating apparatus, where the mixture of the air and gas is so regulated that a great amount of heat is obtained with a very small consumption of gas and without any offensive or injurious odors. The patent in no way anticipates the plaintiff's patent, for it does not discuss the use of the wire gauze or shavings as a consumer of soot and grease.

"It is stated in the Barnes patent, column 2, on page 1: 'The annular mass of twisted wire

substitution of a known material has frequently been held to constitute invention. Smith v. Goodyear Dental, etc., Co., 93 U. S. 486, 23 L. Ed. 952; George Frost Co. v. Cohn, 119 F. 505 (C. C. A. 2); Westmoreland Specialty Co. v. Hogan, 167 F. 327 (C. C. A. 3); General Elec. Co. v. Hoskins Mfg. Co., 224 F. 464 (C. C. A. 7).

The decree is reversed, and the cause remanded for injunction and accounting.

---

mineral dust closely attaching itself to the steel with such tenacity that a very effective separating action is obtained. * * * Any suitable form of apparatus may be utilized in connection with the herein described filtering medium, but a preferable means of carrying the same into effect is to place the strata or diaphram of steel wool across the passageway of a pipe or chamber leading from a suitable dust catcher.'

In claim 2, Kling, the patentee, states: 'A filtering medium for mechanically extracting dust from hot furnace gas, consisting of a body of steel wool.' "