## UNITED SHOE MACHINERY CORPORATION v. E. H. FERREE CO. et al.

### No. 321.

Circuit Court of Appeals, Second Circuit.

April 3, 1933.

Charles Neave, of New York City, and Hector M. Holmes, of Boston, Mass., for appellant.

Donald Campbell, of New York City, and Edward O. Proctor, of Boston, Mass., for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The appellant sues on claims 1, 2, 3, and 5 of the Horgan patent, No. 1,629,870, for an improvement on a clicking machine used in the manufacture of shoe uppers. This machine is used for cutting leather or a plurality of plies of fabric. It has a die bed to support the stock and a laterally swinging hammer arm, supported at one end on a post and manually movable into position over a steel cutting die placed on the stock. When the operator has swung the arm into position over the die, he operates a tripping mechanism as a result of which the hammer arm is driven onto the steel die to force it through the work, and it is then raised to its initial position. At the conclusion of the stroke, the operator swings the arm back, out of the way, so as to have un-

obstructed access to the work for the proper placing of the die for the next cut. These machines are operated by skilled workmen. The arm is a ram or hammer arm, and strikes the steel die with great force. The shaft is operated at the speed of 420 r. p. m. and it takes one-seventh of a second for the arm to reciprocate. The force which must be exerted by the arm in striking the steel die and forcing it through the work is rated from 4½ to 9 tons or more. The arm is a large massive member necessarily having great rigidity, strength, hardness, and toughness. The problem which this inventor sought to overcome was to lighten the weight of the cast-iron hammer. Appellant's hammer arm weighed 216 pounds. The appellee's arm weighed 519 pounds. This great weight was regarded as advantageous for cutting. Both appellant and appellee are manufacturers of this type of machinery and are competitors. They both regarded heavy weight as desirable, and it occurred to no one to change to a relatively light aluminum alloy until Horgan suggested it in his application filed August 6, 1924, and on which he was granted a patent May 24, 1927. This great weight of heavy cast-iron arm while in operation is swung back and forth repeatedly during the working day. This was very tiresome and burdensome to the operator. It is estimated that it was repeated 4,000 times a day. Men in the art were at work endeavoring to overcome this burdensome task. The suggestion made by Horgan that the material might be changed was discouraged. But he experimented, casting his aluminum alloy arm on the model of a standard cast iron arm of the appellant. It was given a test and worked satisfactorily and successfully. It was tried out on the appellant's machines, and now has been substituted on approximately 7,400 arms of its machines which are leased to shoe manufacturers. The appellee then followed and substituted the aluminum arm on its machines. The two-piece arm now weighs about 74 pounds, and the bolts by which it is secured to the cap portion of the arm weigh 32 pounds. The center of gravity was placed closer to the spindle in the two-piece arm sometimes used in place of the one-piece arm. It requires 13 foot pounds of energy to swing through a 90° path the 216 pounds cast-iron arm of the appellant, 10 foot pounds to swing the prior 168 pound arm, and less than 6 pounds of energy to give a corresponding swing to the one-piece or the two-piece aluminum arm. The appellee's cast-iron arm weighing 519 pounds was replaced by an arm weighing only 173 pounds. The amount of energy necessary to swing these arms does not appear. The record fully establishes an improvement that workmen experienced by this change, and the quality of the work performed is as good.

The claims provide for a presser member for clicking machines "composed of an aluminum alloy having a high aluminum content." They also describe a clicking machine fully, and call for an arm of aluminum alloy having certain characteristics such as hardness approximating that of iron (claim 1) or of aluminum having a high aluminum content and a corresponding low density (claims 2 and 5). The claims are not limited to aluminum alloy arms of particular design of structural strength, and provide for one-piece as well as two-piece arms.

Prior to this invention, the uses of aluminum alloys and their qualities were known, but there is nothing disclosed which taught the use of aluminum alloy for a clicker arm or for an analogous purpose. It was thought impracticable and impossible of accomplishment when the inventor undertook to put his idea into practice, but it ended the use of the cast-iron arm because of the benefits derived from its use and due to lessening the burden which it accomplished. It also obtains the required results for cutting leather with the same finish as the old cast-iron arm. The appellee regarded the cast-iron arm as too heavy, and, when the aluminum arm appeared, adopted it and advertised this new step forward. The great feature of its machine that it advertised was that, "on account of the light and evenly balanced aluminum swinging beam, it did not tire the operator, a fault of most clicking machines." There is testimony that the operator of the machine could accomplish more work and increase production. The cast-iron arm cost $12.50, and the new aluminum arm cost $50 each. Still the machines of both parties were equipped with the new and more expensive aluminum arm. It has become the standard equipment of both parties in their various models.

The fact that it may be regarded as a simple change of material does not take away the merits of the patentee's accomplishment. Prior inventors were trying to take care of the objectionable features of the heavy cast-iron arm and did not think of the use of aluminum alloy. This supports the claim of invention. That the art needed a lighter arm gave rise to an incentive which spurred others to work on the problem, and, because, after its accomplishment, it seemed so simple,

does not defeat the claim of invention. Potts v. Creager, 155 U. S. 597, 608, 15 S. Ct. 194, 39 L. Ed. 275; Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. The fact that, as stated in the case of Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 S. Ct. 652, 656, 53 L. Ed. 1034, "the invention seems simple after it is made does not determine the question; if this were the rule, many of the most beneficial patents would be stricken down." White v. Morton E. Converse & Son, 20 F.(2d) 311, 313 (C. C. A. 2). One of the safe tests of patentability is to inquire as to the condition of the art and the call for improvement. Dubilier v. N. Y. Coil Co., 20 F.(2d) 723, 725 (C. C. A. 2); R. Hoe & Co. v. Goss Printing Press Co., 30 F.(2d) 271, 274 (C. C. A. 2).

But it is said that this was a mere substitution of material and therefore does not rise to the dignity of invention. To be sure substitution of material may not amount to patentable invention, but the facts of each case must determine whether or not it does. The use of one material instead of another in constructing a known machine is in most cases so obvious as a matter of mere mechanical judgment as not to be inventive thought, but it can amount to invention if some new and useful result or increase of efficiency and decided saving in the operation is clearly obtained. Hicks v. Kelsey, 18 Wall. 670, 673, 21 L. Ed. 852. In George Frost Co. v. Cohn, 119 F. 505, 507, this court held it to be invention where there was a substitution of rubber for metal in a garter button, and we stated that the feature of novelty resides only in the material of which the button is composed. There was no claim of new qualities in the rubber, and properties of rubber were known to every one at the time. Against the argument that a mere substitution of materials was a perfectly obvious thing to do, we said: "It was also common knowledge that it has the property of clinging, and its use on shoes, stairway steps, and for mats and floor coverings are familiar instances illustrating its adaptability to prevent slipping. It has also been used for buttons in order that its elasticity would permit the button to yield easily to sudden pressure, and yet not abrade the fabric of the buttonhole, as in the instance of the collar stud of the Allen patent. * * * When the substitution has accomplished a result which those skilled in the art had long and vainly sought to effect, the evidence that it involved something beyond the skill of the calling is so persuasive that it generally resolves the inquiry in favor of patentable novelty."

The substitution of a known material has been held to constitute invention. Akme Flue v. Aluminite Flexible Flue Cap Co., 27 F.(2d) 736, 738 (C. C. A. 2); Snow v. Kellar-Thomason Co., 241 F. 119 (C. C. A. 9); Stillwell v. McPherson, 218 F. 839 (C. C. A. 2).

Infringement by the appellee is clear. It makes its arm on the clicker machine in substantially the same way in the essential particulars. The only structural difference lies in that the arm is not flexibly secured to the pillar or post, but swings on the post. The post does not rotate, but does reciprocate up and down with the arm. The composition of the alloy as well as the manufacture and sale of these types of alloy arms for clicker machines is an infringement of the claims. Indeed, as soon as the appellant's arm appeared, the appellee appropriated it and put it upon its machine and obtained the benefits therefrom. Both one-piece and two-piece arms come within the patent.

Judgment reversed.